| | | |
|---|---|---|
| MARIO BERRY, | ) | |
| on behalf of himself and others | ) | |
| similarly-situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16-cv-00473-JAR |
| | ) | |
| BEST TRANSPORTATION, INC., d/b/a | ) | |
| BEST TRANSPORTATION OF | ) | |
| ST. LOUIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Reconsideration (Doc. 138) of the Court's March 29, 2018, Order granting Plaintiff's Motion for Partial Summary Judgment (Doc. 137).

### I. Procedural History

On March 29, 2018, the Court issued a memorandum and order denying Defendants' Motion for Summary Judgment as to the claims of Plaintiff Mario Berry, but the order did not mention the factually distinct claims of Plaintiffs Everett Scott or Robert Baker. (*Id*.) Defendants filed a Motion for Reconsideration, asking the Court to rule on Scott's and Baker's claims, and to reconsider its ruling on Berry's claims based on recent Supreme Court precedent. For the reasons that follow, the Court will grant the Motion for Reconsideration as to Scott's and Baker's claims and deny it as to Berry's claims.

### II. Factual Background

Defendant Best Transportation, Inc., is a Missouri company that provides transportation services. (Doc. 96-1 at ¶ 1.) Defendants Kim Garner and Deborah Rudawsky are co-owners of Best Transportation. (*Id*. at ¶ 2.) Best Transportation operates a division known as GO Best Express, which "specializes in transporting individuals to and from locations within the St. Louis Metropolitan Area and into Illinois; including to and from Lambert International Airport," in St. Louis. (*Id*. at ¶ 3.)

Prior to April 2014, GO Best Express operated a fleet of nine Ford E-350 Econoline Super Duty Extended Wagon vans, which were given vehicle numbers in the 300's (the "300 Vans"). (*Id*. at ¶ 6.) The E-350 had a gross vehicle weight rating of 9,100 pounds and was marketed as accommodating up to fifteen passengers, including the driver. (*Id*. at ¶¶ 7-8). GO Best Express removed the four-seat rear bench to create space for passengers' luggage, reducing the 300 Vans' seating capacity to eleven. (*Id*. at ¶ 9.)

In 2009, Best Transportation signed a contract with Lambert International Airport to transport passengers to and from the airport. (*Id*. at ¶ 11.) Because the contract stipulated that Best Transportation must use vehicles with no more than eight seats, Best Transportation removed the three-seat middle bench from the 300 Vans. (*Id*. at ¶¶ 12-14.) In December 2011, when Best Transportation and the airport amended their contract to allow the use of vans with more than eight seats, Best Transportation replaced the middle benches in all of the 300 Vans. (*Id*. at ¶¶ 15-20.) Best Transportation made no other modifications to the 300 Vans.

In 2014, Best Transportation signed a new contract with the airport that did not include a seat limit and leased eleven new Ford E-350 vans, which were given vehicle numbers in the 900's (the "900 Vans"). (*Id*. at ¶ 24.) Like the 300 Vans, the 900 Vans were also rated at 9,100 pounds and marketed as accommodating up to fifteen passengers. (*Id*. at ¶¶ 25, 28.) The 900

Vans were leased from Penske, who removed the rear bench to make space for luggage before delivering them to Best Transportation, thereby reducing the seating capacity to eleven. (*Id*. at ¶ 29.) Best Transportation made no other modifications to the 900 Vans. (*Id.* at ¶¶ 30-32.)

Plaintiff Mario Berry worked as a driver for the GO Best Express division from May 2013 to April 2015. (*Id*. at ¶¶ 33-34.) Occasionally, Berry drove for Best Transportation's other divisions. (*Id*.) When driving for GO Best Express, Berry primarily operated the 300 and 900 Vans, although he also drove other vehicles that could accommodate thirteen, fourteen, twenty-one, or twenty-four passengers. (*Id*. at ¶¶ 37-38.) When assisting Best Transportation's other divisions, however, Berry drove sport utility vehicles ("SUV's") with seating capacities of eight or less. (*Id*. at ¶ 40.)

Plaintiff Everett Scott worked as a driver for the GO Best Express division from April 2010 to August 2014, driving the 300 and 900 Vans. (*Id*. at ¶¶ 42, 49.) From August 2014 through the end of his employment with Best Transportation in April 2015, Scott drove airport shuttles under a contract between Best Transportation and SkyPark Airport Parking, LLC. (*Id*. at ¶ 42.) The SkyPark shuttles seated twelve to fourteen passengers and were driven along a fixed loop entirely within Missouri. (*Id*. at ¶ 50.)

Plaintiff Robert Baker worked as a driver for the GO Best Express division from June 2008 to March 2015. (*Id*. at ¶52.) Baker primarily operated the 300 and 900 Vans, as well as other vehicles with seating capacities of thirteen or fourteen. (*Id*. at ¶¶ 55-57.) On six occasions during his nearly seven-year employment with Best Transportation, Baker drove SkyPark shuttles with capacities of twelve or fourteen. (Doc. 96-33 at 65.)

On April 6, 2016, Berry, on behalf of himself and others similarly situated, filed suit against Defendants, alleging that they had failed to pay overtime wages in violation of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19. (Doc. 1.) The parties conducted an initial phase of discovery on the issue of whether Berry and those similarly situated were exempt from overtime protection under the so-called Motor Carrier Act exemption (the "MCA exemption") to the FLSA. (Doc. 75); 29 U.S.C. § 213(b)(1).

Defendants filed this Motion for Summary Judgment, arguing that Berry, Scott, and Baker (collectively, "Plaintiffs") were exempt from overtime protection under the MCA exemption. (Doc. 96.) Plaintiffs respond that the MCA exemption does not apply because they were not engaged in interstate commerce. (Doc 110.) In addition, they argue that, even if the MCA exemption does apply, Berry is entitled to the protection of the SAFETEA-LU Technical Corrections Act of 2008 (the "TCA exception"), because the SUV's he drove were "small vehicles" with only eight seats. Pub. L. No. 110–244, Title III, § 306(a) (2008) [hereinafter "TCA"]. (Doc. 110.)

Plaintiffs then filed a Motion for Partial Summary Judgment, again arguing that GO Best Express could not claim the MCA exemption because its drivers were not engaged in interstate commerce. Berry alternatively argues that unless Defendants can show that he *never* drove a small vehicle, he is eligible for overtime under the TCA exception. (Doc. 99.) Because Defendants admit that Berry drove small vehicles during at least twenty weeks, he argues that he is entitled to summary judgment regarding those weeks. (*Id*.) Defendants respond that Plaintiffs misstate the standards for the exemption and that Berry's operation of SUV's was de minimis, meaning he does not qualify for the protection of the TCA exception. (Doc. 128.)

### III.    Legal Standard

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine issue of material fact exists and that the

moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn.,* 490 F.3d 648, 654 (8th Cir. 2007); *see* Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.* "The basic inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.,* 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *City of Mt. Pleasant v. Ass'd Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). If the movant does so, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. *Anderson*, 477 U.S. at 249.

As noted, the Court reviews the facts in a light most favorable to the party opposing the motion and gives that party the benefit of any inferences that logically can be drawn from those facts. The Court is required to resolve all conflicts of evidence in favor of the nonmoving party, *Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 619 (8th Cir. 1988), and may not make credibility determinations, weigh the evidence, or draw inferences from the facts, *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

## IV. Discussion[1]

Under the FLSA, employees are entitled to one and one-half times their hourly rate for anything more than forty hours in one workweek. 29 U.S.C. § 207(a)(1). However, any

---

[1] The substance of both pending motions overlap to such a degree that the Court will discuss

employee whose position falls under the authority of the Secretary of Transportation—including anyone who works for a so-called "motor carrier" such as Best Transportation—is exempt from overtime protection under the MCA exemption.  § 213(b)(1).  Still, the TCA exception to the MCA exemption brings certain "covered employees" back under FLSA overtime protection—those who operate vehicles that weigh less than 10,000 pounds and that were neither "designed" nor used to transport eight or more passengers, including the driver.  TCA § 306(c).  The issue for the Court's determination is whether Plaintiffs and those similarly situated are exempt under the MCA exemption and/or are "covered employees" under the TCA exception.

### A.  The MCA exemption applies to Plaintiffs and similarly situated drivers.

There is no dispute that Plaintiffs are covered by the FLSA, so Defendants must show that they "fit plainly and unmistakably within the [MCA] exemption's terms and spirit." *Fezard v. United Cerebral Palsy of Cent. Ark.*, 809 F.3d 1006, 1010 (8th Cir. 2016) (citation omitted).  Under the MCA exemption, an employee is exempt from—and therefore is not paid—overtime when:

(1) his employer is under the jurisdiction of the Secretary of Transportation;

(2) he is a driver, driver's helper, loader or mechanic; and

(3) he "engages in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce."

*Williams v. Cent. Transp. Int'l, Inc.*, No. 4:13-CV-2009 CEJ, 2014 WL 1344513, at *2 (E.D. Mo. Apr. 4, 2014) (citation omitted); 29 C.F.R. §§ 782.2(a)-(b)(2).

Plaintiffs first argue that Defendants cannot meet the first or third elements because GO Best Express's drivers do not operate motor vehicles "in interstate or foreign commerce" as that

---

their arguments together, rather than in discrete sections devoted to each motion.

element is interpreted. (Doc. 99 at 8-12.) Defendants respond that Plaintiffs have never challenged the interstate nature of GO Best Express's business and therefore the Court should not allow them to raise the issue now. (Doc. 128 at 14-16.) Because the Court finds that GO Best Express was engaged in interstate commerce, it will not penalize Plaintiffs at this juncture for their failure to raise the issue before now.

"Highway transportation by motor vehicle from one State to another, in the course of which the vehicles cross the State line, clearly constitutes interstate commerce [and e]mployees of a carrier so engaged, whose duties directly affect the safety of operation of such vehicles, are within the [MCA] exemption." 29 C.F.R. § 782.7. Defendants assert that Plaintiffs each drove into Illinois on multiple occasions[2] while employed by GO Best Express and that, during the relevant time period, Best Transportation sent employees into Illinois nearly 400 times. (Doc. 128 at 19.)

Berry argues that the rare trip over state lines is insufficient to satisfy the interstate commerce element. (Doc. 99 at 8-12.) He cites *Morris v. McComb*, 332 U.S. 422, 427 (1947), for the proposition "that a company's interstate business is *de minimis* if . . . less than one percent of its trips are interstate." (Doc 99 at 12.) In response, Defendants point to the Eighth Circuit's opinion in *Alexander v. Tutle & Tutle Trucking, Inc.*, 834 F.3d 866, 871 (8th Cir. 2016), in which the Circuit Court held that an employer is engaged in interstate commerce "if there is a 'reasonable expectation' that [its employees] will be directed to perform interstate driving." *Id.* at 870. Indeed, the Eighth Circuit held that an employer may invoke the MCA exemption even as to "*a driver who performs no interstate driving*" so long as he is "'subject to being assigned to

---

[2] According to Defendants' documentation, Berry made thirteen trips into Illinois, Scott made fifteen, and Baker made thirty. (Doc. 128 at 19.)

an interstate trip' and there is a reasonable expectation of such an assignment." *Id*. (emphasis added) (quoting *Starrett v. Bruce*, 391 F.2d 320, 323-24 (10th Cir. 1968)).

The Court agrees with Defendants. Given the geographic area in which GO Best Express operates and the fact that it routinely sent drivers into Illinois, there can be no dispute that Plaintiffs were subject to being assigned an interstate trip and there was a reasonable expectation that they would be. In fact, they were. Because Plaintiffs worked as drivers of motor vehicles, the Court concludes that Plaintiffs and similarly situated drivers are exempt from overtime protection under the MCA exemption.

Plaintiffs argue that the MCA exemption does not cover the time Scott and Baker spent driving under the SkyPark contract because those trips consisted of a fixed loop entirely inside Missouri. (Doc. 144 at 3-4.) The Court agrees that an employee who only drives loops that do not cross state lines is not operating a motor vehicle in interstate or foreign commerce and is therefore outside the coverage of the MCA exemption. However, the Court concludes that neither Scott nor Baker is owed overtime for their time spent driving SkyPark shuttles.

First, Plaintiffs concede that Defendants reclassified Scott as overtime eligible and paid him overtime while he was driving under the SkyPark contract. (*Id*. at 4.) Accordingly, Scott's claim for unpaid overtime covers only the time before he was reclassified, when he was driving for the GO Best Express division and was therefore subject to being assigned, would have reasonably expected to be assigned, and actually was assigned interstate trips. For the reasons discussed above, Scott was exempt from overtime during that time period under the MCA exemption.

Meanwhile, the Court finds that Baker drove for SkyPark too infrequently to affect the application of the MCA exemption. Defendants' documentation shows that Baker drove

SkyPark shuttles on only six occasions in more than seven years. (Doc. 96-33 at 65.) Unlike Scott, who was reclassified by Defendants because of his exclusive operation of shuttles along the wholly intrastate SkyPark loop, Baker operated SkyPark shuttles on random, one-off occasions. The Court concludes that, for purposes of the MCA exemption, days on which Baker drove the intrastate SkyPark route are no different than days when Baker was subject to, but not assigned, an interstate GO Best Express route. Thus, Baker was exempt from overtime under the MCA exemption.

      B.  <u>The TCA exception to the MCA exemption may apply to Berry but does not apply to Scott or Baker.</u>

The TCA exception to the MCA exemption reinstates overtime protection for covered employees "whose work, in whole or in part," consists of driving vehicles that weigh 10,000 pounds or less, unless those vehicles are "designed or used to transport more than eight passengers." TCA § 306(c); *see also LaCurtis v. Express Med. Transporters, Inc.*, 856 F.3d 571, 575 (8th Cir. 2017). In other words, Plaintiffs must show that their work as drivers included the operation of vehicles that weighed less than 10,000 pounds and that those vehicles were neither designed nor used to transport more than eight passengers. The 300 and 900 Vans weighed less than 10,000 pounds but were sometimes used to transport more than eight passengers. Thus, the dispositive question is whether the 300 and 900 Vans were "designed" to transport more than eight passengers. Additionally, it must be determined whether Berry's occasional operation of SUV's affects his eligibility for overtime protection under the TCA exception.

    *i.  The 300 and 900 Vans were "designed" to transport more than eight passengers.*

Defendants first argue that the plain and unambiguous definition of "designed" in this instance means the intended use of the vehicle at the time of manufacture. (Doc. 103 at 10.) In

support, they cite *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 501 (1982)—a U.S. Supreme Court opinion interpreting "designed or marketed for use with illegal cannabis or drugs" as "refer[ing] to the design of the manufacturer, not the intent of the retailer or customer." Because Ford marketed the E-350 to accommodate "up to 15 passengers," Defendants argue that the 300 and 900 Vans were indisputably "designed" to transport more than eight people. (*See* Doc. 109 at ¶ 7.) In addition, Defendants cite to several publications by the Department of Transportation's ("DOT") Federal Motor Carrier Safety Administration, interpreting similar uses of "designed" to mean "the number of designated seats as originally designed[, e]ven if you remove some seats," and "the original design[; r]emoval of seats does not change the design capacity of the [vehicle]." (Doc. 103 at 12.)

Plaintiffs respond that although the vans as manufactured could fit a maximum of fifteen passengers, Ford "designed" the E-350 to allow for "various seating capacities," as evidenced by the ease with which seats are removed. (Doc. 110 at 10.) In fact, Plaintiffs argue, this flexible design is what led Defendants to purchase the E-350 in the first place. (*Id.*) In support of their position, Plaintiffs cite *LaCurtis*—a case about high-capacity vans being altered to accommodate wheel chairs—for the proposition that "Congress did not intend for the term 'designed' as used in TCA § 306(c) to be limited to a vehicle's original design no matter what happens to the vehicle after its original design and manufacture." 856 F.3d at 579-80.

The Court agrees that *LaCurtis* provides the appropriate framework to interpret "designed." *Id*. at 578. "Designed" is not defined in the TCA and the statute provides no indication as to whether it means "as originally designed" or "as currently designed." *See* TCA § 306. In *LaCurtis*, the Eighth Circuit discussed the plain meaning of "design," the congressional intent behind the MCA and TCA, and the same agency interpretations Defendants

10

cite in this case, and found them all unpersuasive. 856 F.3d at 579-80. Instead, the Circuit Court held that "design" is not limited to a vehicle's original specifications "no matter what happens to the vehicle after." *Id*. In so holding, the Eighth Circuit recognized that there is a threshold at which point alterations to a vehicle are so significant as to constitute a "comprehensive redesign" such that the original specifications are no longer dispositive. *Id*. at 580. Whether modifications to a given vehicle cross that threshold is the key inquiry.

However, the Court finds that, under the specific factual circumstances of this case, the alterations made by Defendants are so insignificant that the Court can determine as a matter of law that the "design" of the 300 and 900 Vans did not change. The "paralift" vans driven by the *LaCurtis* plaintiffs "undisputedly underwent a comprehensive redesign and substantial modifications by a third-party manufacturer before being delivered to [defendant] and placed into service." *Id*. at 580. Such was not the case here. In this case, the vehicles arrived to Defendants with more than eight seats—the 300 Vans were sent to Defendants as manufactured and the 900 Vans were sent with only the rear bench removed. Neither alteration could be reasonably construed as a "comprehensive redesign [or] substantial modification." *Id*. Likewise, in *LaCurtis*, "the third-party manufacturer . . . altered the roof and doors, and installed wheelchair anchors, ramps, and lifts in accordance with the redesign." *Id*. The most significant alteration by Defendants in this case was the temporary removal of two bench seats; the vehicles were otherwise unchanged. In fact, the redesign in *LaCurtis* was so significant that "the third-party manufacturer placed new placards on the door pillars to comply with [federal] labeling requirements." *Id*. The alterations in this case were too minor to require relabeling.

Given the significant factual differences between the paralift vans in *LaCurtis* and the vehicles involved in this case, the Court concludes that Defendants' alteration of the 300 and 900

Vans did not constitute a redesign. Indeed, the *LaCurtis* court itself noted in dicta that "more modest changes to a vehicle, *such as the removal of seats by a final user*" are likely insufficient to change the "design" of the vehicle. *Id*. at 580, n.7 (emphasis added). Ford's original specifications and marketing of the E-350 as accommodating up to fifteen passengers therefore control. Thus, the operation of the 300 and 900 Vans does not meet the requirements of the TCA exception.

<blockquote>

ii.   *A genuine issue of material fact exists as to whether Berry's operation of SUV's makes him a "covered employee" under the TCA.*

</blockquote>

As noted, Defendants concede that Berry spent some time driving SUV's that were designed and used to transport no more than eight passengers, including the driver. (Doc. 103 at 20; *see also* Doc. 96-1 at ¶ 40.) Berry argues that his operation of those small vehicles made him a "covered employee" under the TCA exception. Defendants assert that Berry's operation of small vehicles was too rare to mandate overtime pay—only twenty-six days out of 480; slightly more than five percent of his tenure at Best Transportation. (Doc. 103 at 20.)

Courts are split on whether an employee whose work involves a "mixed fleet" of vehicles—some of which meet the elements of the TCA exception and some of which do not—is a "covered employee" entitled to overtime protection under the TCA exception or is exempt from overtime protection under the MCA exemption. *See, e.g.*, *Wilkinson v. High Plains Inc.*, No. 1:16-CV-011, 2018 WL 1123863, at *4 (D.N.D. Mar. 1, 2018) (collecting cases). Some courts have held that the key inquiry is whether the plaintiff's work, in whole or in part, was the operation of *large* vehicles—those too heavy or designed to transport too many passengers to qualify for the TCA exception. *See, e.g.*, *Avery v. Chariots For Hire*, 748 F. Supp. 2d 492, 500 (D. Md. 2010); *Dalton v. Sabo, Inc.*, No. CIV 09-358-AA, 2010 WL 1325613, at *4 (D. Or. Apr. 1, 2010); *Hernandez v. Brink's, Inc.*, No. 08-20717-CIV, 2009 WL 113406, at *6 (S.D. Fla. Jan.

15, 2009); *Jaramillo v. Garda, Inc.*, No. 12 C 662, 2012 WL 4955932, at *4 (N.D. Ill. Oct. 17, 2012). Other courts find that the key inquiry is whether the plaintiff's work, in whole or in part, was the operation of *small* vehicles—those weighing less than 10,000 pounds or designed for eight of fewer. *See, e.g.*, *McMaster v. E. Armored Servs., Inc.*, 780 F.3d 167, 169 (3d Cir. 2015); *Schilling v. Schmidt Baking Co., Inc.*, 876 F.3d 596, 601 (4th Cir. 2017); *Childress v. Ozark Delivery of Missouri L.L.C.*, 95 F. Supp. 3d 1130, 1137 (W.D. Mo. 2015); *Aikins v. Warrior Energy Servs. Corp.*, No. 6:13-CV-54, 2015 WL 1221255, at *5-6 (S.D. Tex. Mar. 17, 2015). The Eighth Circuit has not squarely addressed the issue.

The Court concludes that the second reading is the more natural; that the analysis focuses on the employee's operation of *small* vehicles. Under the TCA exception, the term "covered employee" means an individual who is employed by a motor carrier, "whose work, in whole or in part, is defined as that of a driver . . . affecting the safety of operation of motor vehicles weighing 10,000 pounds or less . . . except vehicles designed or used to transport more than 8 passengers." TCA § 306(c)(2)(A-C) (emphasis added). To interpret the statutory language as Defendants suggest—asking whether Berry's job was, in part, to drive vehicles that weigh *more* than 10,000 pounds when the statute expressly says "motor vehicles weighing 10,000 pounds or less"—is contradictory to the plain language of the text. Thus, if an employee's work consists, in whole or in part, of the operation of vehicles weighing less than 10,000 pounds, he qualifies under the TCA exception *unless* those vehicles are designed or used to transport more than eight passengers. *Id*. at § 306(C)(2)(B)(i). The issue for the Court, therefore, is whether Best Transportation employed Plaintiffs to, in whole or in part, drive motor vehicles weighing less than 10,000 pounds which were neither designed nor used to transport more than eight passengers.

13

Because Berry's work for Best Transportation was, in part, that of a driver of motor vehicles weighing 10,000 pounds or less which were neither designed nor used to transport more than eight passengers (the SUV's), he appears to meet the definition of a "covered employee" entitled to overtime protection. However, because neither Scott nor Baker has alleged that he operated SUV's or other small vehicles, they are not covered by the TCA exception, and Defendants are entitled to summary judgment on their claims.

The Court's holding is in accord with the reasoning of multiple circuit courts and numerous district courts applying the TCA exception in mixed-fleet cases. In *McMaster v. E. Armored Servs., Inc.*, 780 F.3d 167, 168 (3d Cir. 2015), the Third Circuit held that an employee who drove both TCA-qualifying and non-qualifying vehicles was entitled to overtime protection even though she drove the qualifying vehicles a minority of the time. The Fourth Circuit held in *Schilling v. Schmidt Baking Co., Inc.*, 876 F.3d 596, 601 (4th Cir. 2017), that "[t]he text of the TCA plainly provides that employees working on mixed fleet vehicles are covered by the TCA exception." *Accord Wilkinson*, 2018 WL 1123863, at *4 (citing *Pye v. Oil States Energy Servs., LLC*, 233 F. Supp. 3d 541, 554 (W.D. Tex. 2017); *Garcia v. W. Waste Servs., Inc.*, 969 F. Supp. 2d 1252, 1260 (D. Idaho 2013)).

Defendants assert that, even if Berry's operation of the SUV's meets the elements for the TCA exception, he did so too infrequently to qualify for the TCA exception.[3] (Doc. 103 at 22-23.) Berry argues that Defendants' proposed "de minimis" standard is unnecessary in light of the TCA's plain language; he asserts that "in whole or in part" means any operation of small vehicles, no matter how minimal. (Doc. 110 at 5.)

---

[3] Defendants list twenty-six dates on which Berry drove small vehicles, but Berry asserts that the records Defendants reference are incomplete.

The Court finds that case law supports Defendants' argument for the inclusion of a de minimis threshold. As the District Court for the Western District of Missouri succinctly put it: "Where a mixed fleet is involved, the issue for the court is whether the employee spends more than a de minimis amount of time operating [small] vehicles." *Childress*, 95 F. Supp. 3d at 1137. The Court additionally recognizes that a de minimis standard eliminates the need to account for every operation of TCA-qualifying vehicles, no matter how isolated, which would otherwise impose a significant burden on employers. The Eighth Circuit reached a similar conclusion in *McCall v. Disabled Am. Veterans*, 723 F.3d 962, 966 (8th Cir. 2013), noting that:

> Dividing jurisdiction over the same drivers, with the result that their employer would be regulated under the [MCA] when they were driving the big trucks and under the [FLSA] when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes.

(alterations in original) (quoting *Collins v. Heritage Wine Cellars, Ltd.,* 589 F.3d 895, 901 (7th Cir. 2009)). Thus, a minimum threshold for the application of the TCA exception makes sense.

However, the Court finds that a genuine issue of material fact exists as to whether Berry's operation of the SUV's was more than de minimis. "[D]e minimis is more of a standard than a rule, clearly defined in the extremes but much hazier toward the middle." *Davis v. White*, No. 4:10-CV-1429 NAB, 2013 WL 12181901, at *6 (E.D. Mo. Dec. 31, 2013), *aff'd in part, rev'd in part,* 794 F.3d 1008 (8th Cir. 2015). The term is commonly understood as meaning "to a negligible degree" or "so insignificant as to be unworthy of attention." Oxford English Dictionary (3d ed. 2008). Moreover, Berry disputes the completeness of Defendants' records such that a genuine issue of material fact exists even as to how frequently Berry drove SUV's. Accordingly, summary judgment is not appropriate as to his Berry's claims.

C. *Navarro* does not alter the Court's analysis.

15

Defendants insist that the Supreme Court's recent opinion in *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018), "seriously undermines the reasoning of many of the cases cited by both sides and this Court;" cases "that carried a presumption against the application of exemptions." (Doc 139 at 6.) Defendants argue that *Navarro* was a "fundamental change in how courts are to construe exemptions to the FLSA" and that the Court "disavowed the familiar 'principle' that 'exemptions to the FLSA should be construed narrowly.'" (*Id*. (citing *Navarro*, 138 S. Ct. at 1142).) The Supreme Court held that courts should give the statutes "a fair reading" and nothing more. *Navarro*, 138 S. Ct. at 1142.

This Court hastens to note that it has found that Plaintiffs and those similarly situated *are* covered under the MCA exemption. It therefore concludes that Defendants' request for "a fair reading" of the MCA exemption is in reality a request for a narrow reading of the TCA exception. Indeed, Defendants suggest that the holding in *Navarro* compels this Court to reconsider its interpretation of the TCA exception in this case. (Doc. 139 at 8-9.) However, *Navarro* focuses entirely on exemptions and makes no mention of exceptions. *See generally*, 138 S. Ct. 1134. In any event, this Court finds that narrowly construing the TCA exception would be contrary to the Supreme Court's express directive to give the statutes "a fair reading."

To that end, while Defendants are correct that some of the cases cited by the parties and by the Court reference a narrow application of exemptions, the Court finds that its holding is faithful to *Navarro*'s directive to give the statute "a fair reading." As explained above, the fair and natural reading of the TCA exception is that it applies to any driver whose work involves, in whole or in part, the operation of light vehicles unless those vehicles are ether designed or used to transport more than eight passengers. Berry's work involved, in part, the operation of SUV's that weighed less than 10,000 pounds and which were neither designed nor used to transport

16

more than eight passengers.  Accordingly, the TCA exception applies so long as his operation of the SUV's was more than de minimus.

### V.      Conclusion

For these reasons, the Court concludes that genuine issues of material fact exist that preclude it from finding, as a matter of law, whether Berry is entitled to overtime protection under the FLSA.  The Court further concludes that Scott and Baker are exempt employees not entitled to overtime protection.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Reconsideration (Doc. 138), is **GRANTED in part.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 96) is **GRANTED in part** as to the claims of Plaintiffs Everett Scott and Robert Baker and **DENIED in part** as to the claims of Plaintiff Mario Berry.

**IT IS FINALLY ORDERED** that Plaintiffs Mario Berry, Everett Scott, and Robert Baker's Motion for Partial Summary Judgment (Doc. 99) is **DENIED**.

Dated this 27th Day of December, 2018.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE